UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

FRANK REYNOLDS

    Defendant

CRIMINAL No. 18-CR-10154-DPW

UNITED STATES' CONSOLIDATED OPPOSITION TO REYNOLDS'S
MOTIONS TO DISMISS COUNTS ONE AND THREE

The United States opposes Frank Reynolds's two Motions to Dismiss on the following grounds:

(1) Count One is not duplicitous. It properly charges a continuing securities fraud scheme to promote investments in PixarBio as one count.

(2) Count One more than adequately alleges securities fraud, including by means of market manipulation.

(3) Count Three more than adequately alleges obstruction by Reynolds by alleging the elements of the crime and that Reynolds directed Stromsland to testify falsely in an administrative proceeding before the Securities and Exchange Commission (SEC).

BACKGROUND AND OVERVIEW OF THE INDICTMENT

Count One of the Superseding Indictment in this case (hereinafter referred to as the Indictment) charges Frank Reynolds with a scheme to defraud investors in a small biotech start-up company, PixarBio, through a series of false statements, including false claims that PixarBio's products would replace opioids and end thousands of years of addiction, and by directing manipulative trading of two co-conspirators – Jay Herod and Kenneth Stromsland. Count Two alleges that Reynolds obstructed the SEC investigation through his own testimony and interactions with the SEC administrative proceeding. Counts Three and Four allege that

Reynolds obstructed the SEC administrative proceeding by causing Herod and Stromsland to also testify falsely and otherwise obstruct the SEC investigation. Herod and Stromsland have both pleaded guilty before this Court to securities fraud by manipulative trading and obstruction of the SEC proceeding at Reynolds's direction. Docket # 67, 99.

ARGUMENT

I. COUNT ONE IS NOT DUPLICITOUS. IT ALLEGES A CONTINUOUS SECURITIES FRAUD SCHEME TO PUMP UP THE VALUE OF PIXARBIO.

Count One, which sets forth various ways in which Reynolds carried out his scheme to defraud by promoting investments in PixarBio, is not duplicitous. Where, as here, multiple acts which could be charged as separate offenses are charged as a continuous scheme to defraud, there is no duplicity. *See United States v. Prieto*, 812 F.3d 6, 12 (1st Cir. 2016) ("[A]n indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense.") (quoting *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001)); *United States v. Fields*, 2016 WL 215267, at *8 (D. Mass. 2016) (noting that the government had a legitimate argument that the indictment was not duplicitous because what the defendant described as separate offenses "[were] actually part of a single, overarching scheme to defraud").

In a securities fraud case, the unit of prosecution may be the fraudulent scheme. *See United States v. Langford*, 946 F.2d 798, 803 (11th Cir. 1991) ("The allowable unit of prosecution under section 78j(b) is, therefore, the use of a manipulative device or contrivance[.]"); *United States v. Goodwin*, 2004 WL 769312, *1-2 (D. Mass. 2004) (same). Thus, it is entirely appropriate, as here, to charge conduct which might constitute various separate offenses as one scheme. As the First Circuit in *Prieto* explained:

2

> The government undertook the burden of proving such a single scheme rather than proving only one or several parts. Importantly, the district court also instructed the jury that the government had to prove beyond a reasonable doubt the "single or unified scheme … substantially as charged in the indictment."

812 F.3d at 11-12 (citation omitted).

Here, rather than charge each separate act as a separate offense, the government charged this case as what the evidence will show it to be – one continuous scheme by Reynolds to promote investments in PixarBio. The various false statements, false solicitations and manipulative trading are just various means used by Reynolds (and others) to carry out this scheme. There is no unfair prejudice to Reynolds from a simple indictment and theory of the case. *See Goodwin*, 2004 WL 769312, at *2 (noting, in rejecting duplicity challenge to securities fraud scheme, "[t]here are considerations of practicality that permit the government to plead less than in theory could be plead, as well as prudential concerns of fairness to the defendant that would result from a rule requiring the government to let fly with every arrow in its quiver").

The remedy for any duplicity concerns is not dismissal of the indictment in any event. It is to give an appropriate unanimity instruction at trial. *See Prieto*, 812 F.3d at 11-12 (noting with approval instruction that government had to prove single or unified scheme substantially as charged in the indictment); *United States v. Swantz*, 380 F. App'x 767, 768 (10th Cir. 2010) (unpublished) (jury instructions are "a simple cure for duplicity"); *Fields,* 2016 WL 215267, at *8 (noting, in rejecting duplicity claim, that the court gave unanimity instruction). As explained by the court in *United States v. Place*, 757 F. Supp. 2d 60 (D. Mass. 2010):

> [D]ismissal of the indictment is not the proper remedy … When presented with duplicitous counts, the Court may decide whether to give a unanimity instruction to the jury or to require the government to elect a theory of prosecution.

3

757 F. Supp. 2d at 61 (internal quotations and citations omitted). Any concerns about the multiple means by which the jury could find that Reynolds committed securities fraud are appropriately addressed by a jury instruction, not by dismissal.

II.     COUNT ONE ADEQUATELY STATES A CLAIM.

The Indictment in this case adequately alleges the counts charged by reciting the elements in the statutory language. An indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is legally sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Laureano-Perez*, 797 F.3d 45, 60 (1st Cir. 2015) (internal quotations and citation omitted).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotations and citation omitted). "At the indictment stage, the government need not 'show,' but merely must allege, the required elements." *United States v. Stewart,* 744 F.3d 17, 21 (1st Cir. 2014). "[C]ourts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Id.* (citation omitted). *See also United States v. Morosco*, 67 F. Supp. 3d 483, 490 (D. Mass. 2014), *aff'd,* 822 F.3d 1 (1st Cir. 2016) (finding conspiracy to defraud sufficiently alleged).

In a criminal case, the government "need not put forth specific evidence to survive a motion to dismiss." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (citation omitted). "[T]he question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *Id.* (citation omitted).

> A. <u>The Indictment Alleges All Elements of Securities Fraud and Sufficiently Provides Fair Notice of the Charge in Count One.</u>

Here, the 19-page speaking Indictment alleges all the elements of the crime charged and tracks the statutory language. It describes the securities fraud scheme as follows:

> REYNOLDS and others engaged in a scheme to defraud investors in PixarBio by, among other things, (1) making and causing to be made false and misleading statements about the company, its prospects, its financing and the background and track record of its chief executive officer, REYNOLDS, and (2) engaging in manipulative trading of PixarBio shares in an effort to simulate market interest in the stock and to artificially inflate the share price.

Indictment ¶ 9. Count One incorporates the detailed factual allegations of the speaking Indictment by reference, and then alleges that between 2015 and April 2018:

> [REYNOLDS] did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the U.S. Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person in connection with the purchase and sale of securities, to wit, shares of PixarBio.

Indictment ¶ 63. That is sufficient. The Indictment also provides more than adequate factual support for each count to give the defendant fair notice of the charged offenses. Reynolds's arguments to the contrary are without support in the criminal law, rely upon inapplicable civil

5

pleading standards that do require the pleading of fraud with particularity, and are therefore without merit.

The Indictment alleges a continuing scheme to defraud in which Reynolds did various deceptive things with the goal, *inter alia*, of inducing investment in PixarBio and inflating the price of its stock. It sets forth multiple specific false statements by Reynolds as part of the securities fraud scheme, with the date of the false statement and a factual basis for the allegation that it is false. For example, the Indictment alleges, with specific dates and context, that Reynolds falsely told investors and potential investors that:

(1) the value of the PixarBio portfolio on Wall Street was soaring and worth a billion dollars already, and that this was based upon a conservative forecast. Indictment ¶ 11;

(2) PixarBio had a product that was expected to end thousands of years of morphine and opiate addiction, even though the product is not a treatment for opiate addition. *Id.* ¶ 13;

(3) the FDA had lowered hurdles for FDA approval and confirmed an Investigational New Drug (IND) package, even though no IND package had even been submitted. *Id*. ¶¶ 14-15; and

(4) PixarBio's private securities offering was "oversubscribed" and thus the maximum offering amount would be increased from $20 million to $30 million, when in fact Reynolds knew that the offering was not fully subscribed and had not raised even $10 million. *Id.* ¶ 17.

The Indictment also alleges that Reynolds directed the manipulative trading of Stromsland and Herod. It states:

> Beginning in or about October 2016, and continuing until on or about January 23, 2017, Herod and Stromsland, while in close communication with REYNOLDS, and at times acting at the direction of REYNOLDS, engaged in manipulative trading of PixarBio shares in an effort to simulate market interest in the stock and artificially inflate the share price and trading volume. These trades included overlapping orders to buy and sell PixarBio stock at the same price per share (a manipulative trading practice sometimes referred to as "matched trading"), small purchases to boost the trading price submitted shortly before trading closed at 4:00 p.m. (a manipulative practice sometimes referred to as "marking the close"), and orders to buy at a price much higher than the price of the preceding market transaction.

6

*Id.* ¶ 28. The Indictment also provides specific dates and times of allegedly manipulative trades and the basis for alleging that they were manipulative, and/or marking the close, matched trades. *See id.* ¶ 28-48. For example, the Indictment alleges that on Friday, November 11, 2016, after the trading price of PixarBio stock fell from $14 to $10 per share, Reynolds "told Stromsland to buy shares of PixarBio in order to keep the stock's price up over the weekend." *Id.* ¶ 29. That same afternoon, shortly after Stromsland did as Reynolds directed, the Indictment alleges, Reynolds instructed PixarBio's controller to pay Stromsland a $27,500 "bonus." *Id.* ¶ 36. These detailed allegations of fraud and manipulative trading are more than sufficient to give Reynolds notice of the charges against him as well as protection under the double jeopardy clause against any duplication of charges. Moreover, to the extent that they simply identify the multiple ways in which Reynolds engaged in a scheme to defraud and used manipulative schemes or devices as part of an overall scheme to pump up PixarBio and profit from sales of the stock, they provide detail that is not required. "The means of effecting the criminal intent…or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in an indictment." *Evans v. United States*, 153 U.S. 584, 595 (1894) (internal quotations and citation omitted). Thus, Reynolds's arguments that the specifics as to the means of the fraud are not sufficiently alleged are incorrect as a matter of law.

B. <u>Fed. R. Civ. P. 9(b)'s Fraud with Particularity Requirement Does Not Apply.</u>

Reynolds's argument for dismissal appears to be largely based upon a misunderstanding of the difference between civil and criminal pleading standards and a mistaken reliance on civil pleading standards under Fed. R. Civ. P. 9(b) requiring fraud to be pleaded with particularity. *See* Def. Mem at 7 *et seq*. Reynolds's argument relies upon cases such as *SEC v. Durgarian*, 477

7

F. Supp. 2d 342 (D. Mass. 2008), *ATSI Communs., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007), *Van Ormer v. Aspen Tech., Inc.*, 145 F. Supp. 2d (D. Mass. 2000), and other civil cases applying the "strict and rigorous" pleading requirements of Rule 9(b). However, the Federal Rule of Civil Procedure 9(b) requirement of pleading fraud with particularity is simply not applicable in a criminal case. To the contrary, unlike a civil fraud complaint, as noted above, a criminal indictment need not set forth facts sufficient to prove the charge, but ordinarily need only allege the elements of the charge.

To the extent that Reynolds cites criminal cases at all in his argument, they generally address whether the legal elements are correctly alleged or proven, not a requirement of factual pleading. *See, e.g., United States v. Parigian*, 824 F.3d 5, 10 (1st Cir. 2016) (affirming denial of motion to dismiss but noting the government had at times incorrectly used a "knew or should have known" standard, rather than alleging willfulness); *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) (considering whether willfulness had been proven at trial).

One of the few criminal cases cited by Reynolds that addresses the adequacy of factual pleading in the criminal context is *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. 2017). This case, however, provides no support for dismissal here. To the contrary, the case addressed charges of child pornography where the bare bones allegations were so general that the seven counts were not distinguishable from each other, including for double jeopardy purposes. *See id.* at 71-76. Moreover, in an opinion not cited by Reynolds, after the United States superseded to add some factual allegations as to each count of the child pornography charges, the court rejected the subsequent motion to dismiss for failure to state a claim. *See United States v. Hillie*, 289 F. Supp. 3d 188 (D.D.C. 2018). Thus, nothing in the rulings in *Hillie* supports Reynolds's claim that the Indictment here is inadequate.

8

C. The Indictment More Than Adequately Pleads *Mens Rea*, Manipulative Trading and Deceptive Conduct and Reynolds's Role.

Reynolds argues that Count One of the Indictment does not state a claim because it does not adequately allege (1) the *mens rea* of willfulness, (2) Reynolds's role in the offense, and (3) manipulative and deceptive trading. In fact, however, the Indictment alleges specifically each of these things, but such detailed factual pleading is not required in any event.

*1. Alleging "Willfulness" Is Sufficient to Allege Mens Rea.*

Reynolds's claim that alleging that the securities fraud was done "knowingly and willfully," is not sufficient to allege *mens rea* is contrary to more than 100 years of black letter law. Nothing more than an allegation of the correct level of intent is required to plead intent in a criminal case. As the Supreme Court explained in *Evans*, "Where the intent is a material ingredient of the crime, it is necessary to be averred; but it may always be averred in general terms, as in a case of assault with intent to kill." 153 U.S. at 594. *See also United States v. Simmons*, 96 U.S. 360, 363-64 (1877) (holding that indictment alleging the defendant acted "knowingly and unlawfully" and "with intent to defraud" sufficiently charged *mens rea* for tax fraud); *United States v. Cavins*, 543 F.3d 456, 457-58 (8th Cir. 2008) (rejecting argument that indictment should be dismissed if it merely alleges willfulness without more).

*2. The Indictment Amply Alleges Reynolds's Role in the Fraud Scheme.*

Reynolds's argument that the Indictment does not sufficiently set forth his role in the securities fraud or his aiding and abetting of that fraud is similarly without merit. Despite the fact that, as discussed above, such factual detail is not required, the Indictment specifically alleges that Reynolds made the various false statements to investors set forth in the Indictment. It also alleges that he directed the manipulative trading, and even gave Stromsland a bonus immediately after Stromsland carried out Reynolds's direction to buy the stock to keep the price

9

up over the weekend. Indictment ¶¶ 29, 36. The Indictment further alleges that Reynolds specifically directed Herod's manipulative trading and that Herod transferred approximately $500,000 from the proceeds of that trading to PixarBio and $300,000 to Reynolds. It also alleges that Herod and Reynolds agreed to create a back-dated document and obstruct the SEC investigation with respect to that $300,000 payment.

Moreover, the law is clear that aiding and abetting need not even be pleaded, let alone set forth with additional factual specifics that have been provided here. *See United States v. Sanchez*, 917 F.2d 607, 611 (1st Cir. 1990) (holding that an "aiding and abetting" instruction may be given even though the indictment neither alleges aiding and abetting nor adverts to 18 U.S.C. § 2). The Indictment here is replete with examples of Reynolds engaging in the deceptive conduct himself as well as directing others to do so and thus alleges and provides more than sufficient notice of his participation in the charged conduct.[1]

### 3. *The Indictment Sufficiently Alleges Deceptive Trading.*

Reynolds also argues that the Indictment does not sufficiently allege manipulative trading and deceptive trading conduct. Again, the Indictment tracks the statutory language – which is sufficient. Reynolds complains, however, that the Indictment does not specify details, such as whether Reynolds directed Stromsland as to a specific price, size or time. Def. Mem. at 11. Such detail is not required at the pleading stage – or even as to the proof at trial.

---

[1] Moreover, notice to Reynolds of the charges in this case has been supplemented by the extensive discovery provided. This discovery includes the SEC testimony and the interview reports of the witnesses in this case – witnesses who include the two co-conspirators who have pleaded guilty to the securities fraud and obstruction charges in this matter. *See generally United States v. Berk*, 652 F.3d 132, 139 (1st Cir. 2011) (noting that any lack of pleading was harmless due to fair notice to defendants by the ample other notice provided before the trial).

Reynolds's argument that the Indictment insufficiently alleges matched trading and marking the close fails for the same reasons. These are not the elements of the crime but notice to Reynolds of the ways in which he is alleged to have met the elements.

Moreover, the allegations as to matched trading and marking the close in this Indictment are quite specific, albeit such specificity is not required. *See* Indictment ¶¶ 39-42. For example, having alleged that Herod acted at the direction of Reynolds (*id.* ¶ 28), the Indictment alleges:

> On or about December 5, 2016, Herod made three so-called 'matched' trades in which he placed orders to buy and sell 100 shares of PixarBio at the same time and at the same price. In little more than one hour, his trades, executed at escalating prices, drove the price of the stock from $5.44 per share to $5.70 per share.

*Id.* ¶ 39.

Reynolds's argument that the Indictment fails to allege a personal profit to Reynolds is similarly off-base. This is simply not an element of the securities fraud charge – it is not even a required part of the proof. Thus, it certainly does not need to be alleged in the Indictment. Nevertheless, here, the Indictment does allege that PixarBio received $500,000 of the proceeds from Herod's trading and that Reynolds's spouse received $300,000 of the proceeds for the benefit of Reynolds. Indictment ¶ 48. This is the $300,000 which was the subject of the Back-Dated Agreement. Indictment ¶¶ 50-51, 57-60.

Nor do the few criminal cases cited by Reynolds for this argument provide any support. To the contrary, *United States v. Hunt,* 2006 WL 2613754, *4-8 (S.D.N.Y. 2006), does not address a pleading theory but, rather, the legal theory of material omission in the absence of any actual statements. *United States v. Radley*, 659 F. Supp. 2d 803, 816 (S.D. Tex. 2009), addresses only whether the conduct at issue in that case fell within an exception to the Commodities Exchange Act prohibition on manipulative trading for conduct done for certain negotiated

11

agreements (and done without fraud and misrepresentation). There is no such exception applicable here and the case is simply inapposite. Likewise, *United States v. Mulheren,* 938 F.2d 364, 371 (2d Cir 1991), is a case not about the requirements of the indictment at all, but about whether the proof at trial was sufficient to support the jury's verdict.

For all of these reasons, Reynolds's Motion to Dismiss Count One for failure to state a claim is without merit and should be denied.

> III. THE INDICTMENT STATES A CLAIM AS TO REYNOLDS'S OBSTRUCTION BY INDUCING STROMSLAND TO TESTIFY FALSELY BEFORE THE SEC.

Reynolds's arguments to dismiss Count Three similarly mistake the criminal pleading standard and are without merit. The count alleges all of the required elements of a violation of 18 U.S.C. § 1505, obstruction of an agency proceeding. It pleads that Reynolds "did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede … a pending proceeding … before … the [SEC], by inducing Stromsland to testify falsely before the SEC." Indictment ¶ 67. The Indictment further identifies the dates on which Stromsland did testify falsely before the SEC and sets forth some of that false testimony. It also alleges that Reynolds engaged in obstruction of the SEC proceeding by, among other things, lying himself and causing Stromsland and Herod to lie to the SEC about the purpose of the trading and about Reynolds's knowledge of their manipulative trading and role in it. For example, it alleges that Reynolds made false statements to the SEC about "the manipulative trading in PixarBio shares, including the false assertion that REYNOLDS did not discuss Stromsland's or Herod's trading with them in the fall and winter of 2016 and did not know the nature of their trading in that time period." *Id.* ¶ 51. The Indictment then describes how Reynolds later met with his co-conspirators and induced them to back up his false story. It states:

12

> [O]n or about February 15, 2017, REYNOLDS told Stromsland that he had testified that he had no knowledge of Stromsland's purchases of PixarBio shares in the fall of 2016, despite the fact that REYNOLDS not only knew about the trading but had directed and encouraged it in an effort to stimulate market interest in the stock and artificially inflate the share price and trading volume.

*Id.* ¶ 53. No more is required to state a claim. *See supra* pp. 4-5.

To the contrary, as far back as 1919, in *Frohwerk v. United States*, 249 U.S. 204 (1919), Justice Holmes explained that a count is sufficient even if it does not allege the means by which the conspiracy was to be carried out:

> [A] conspiracy to obstruct recruiting would be criminal even if no means were agreed upon specifically by which to accomplish the intent. It is enough if the parties agreed to set to work for that common purpose… The overt acts are alleged to have been done to effect the object of the conspiracy and that is sufficient[.]

*Id.* at 209. Likewise, for the allegations of endeavoring to influence and aiding and abetting Stromsland's false testimony here, there is no need to plead all the means by which Reynolds or Stromsland carried out the obstruction.

Nonetheless, the Indictment goes above and beyond what is required by specifically alleging that that Reynolds "informed Stromsland about REYNOLDS' false testimony and induced Stromsland to falsely corroborate it when Stromsland testified." Indictment ¶ 52. . The Indictment further alleges that the next day, Stromsland did falsely testify that the purpose of the trading was not in any way to affect the share price. *Id.* ¶ 54. The Indictment therefore not only identifies the proceeding that Reynolds endeavored to and did obstruct – the SEC investigation; it also sets forth the manner in which Reynolds induced the false testimony – by the affirmative act of telling Stromsland that Reynolds had testified to things which Stromsland and Reynolds

both knew to be false the day before Stromsland first testified before the SEC. The Indictment thus more than adequately pleads the obstruction charged in Count Three.[2]

The cases cited by Reynolds, to the extent he cites criminal cases, are not to the contrary. Two of the cases address only the failure to actually allege an element of the crime – the specific proceeding that the defendant was seeking to obstruct. *See United States v. Murphy,* 762 F.2d 1151, 1153-1155 (1st Cir. 1985); *United States v. McGarity*, 669 F.3d 1218, 1240 (11th Cir. 2012). Similarly, in *United States v. Goldberg*, 587 F. Supp. 302, 310 (S.D.N.Y. 1984), *vacated on other grounds*, 756 F.2d 949 (2d Cir. 1985), the court addressed an indictment that recited only the elements but did not identify the proceeding to be obstructed, the witness influenced, or the false testimony induced or endeavored to be induced.

Another case on which Reynolds seeks to rely, *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970), addresses a situation where the bare-bones indictment accused the defendant only of making threats "by an unstated means to an unnamed person on a particular day in a city of moderate size." *Id.* at 979. The court in particular held that the failure to identify the victim in that charge was fatal. *Id.* at 980. Finally, *United States v. Dawlett*, 787 F.2d 771 (1st Cir.

---

[2] The notice provided by the Indictment is further supplemented by the disclosure of the transcripts of the SEC proceedings, Stromsland's own plea colloquy, and the reports from the interviews of Stromsland. *See e.g,* Stromsland 2/16/2017 SEC Testimony at 65-66 (falsely denying that he spoke to Reynolds about his trading at the time of the trading or that anyone directed him to make the purchases); Stromsland 4/26/2017 Testimony at 276 (falsely denying that he had discussions with Reynolds's testimony before the SEC or about what the expected SEC questions would be); Stromsland 5/25/2017 Testimony at 600 (falsely claiming that he did not recall talking with Reynolds about his trades). Such early discovery further alleviates any potential concerns about lack of notice or unfair surprise. *See generally United States v. Mejia*, 448 F.3d 436, 445-46 (D.C. Cir. 2006) (explaining, in upholding denial of bill of particulars, that defendant had adequate notice because the government provided reports of cooperating witnesses' pretrial statements long before trial); *United States v. Ahmed*, 94 F. Supp. 3d 394, 435 (E.D.N.Y. 2015) ("Even where an indictment is deficient, a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.") (internal quotations and citations omitted).

1986), did not address the sufficiency of an indictment at all, but instead the sufficiency of the evidence at trial. None of these cases addresses the sufficiency of an indictment similar to the one here, that pleads and identifies facts relevant to all the statutory elements – including the proceeding obstructed, the witness influenced, and the manner of that influencing. For all of these reasons, Reynolds's Motion to Dismiss Count Three is likewise without merit.

CONCLUSION

WHEREFORE, the United States respectfully submits that Reynolds's Motions to Dismiss Counts One and Three should be denied.

ANDREW E. LELLING
United States Attorney

By: /s/ *Sara Miron Bloom*
SARA MIRON BLOOM
LESLIE WRIGHT
Assistant United States Attorneys
(617) 748-3265

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Sara Miron Bloom*
SARA MIRON BLOOM
Assistant United States Attorney

Date: June 5, 2019