UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL No. 1:18-10154-DPW |
| FRANCIS M. REYNOLDS, | **FILED UNDER SEAL** |
| | **REDACTED VERSION FILED ON** |
| Defendant | **PUBLIC DOCKET** |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR RELEASE PENDING APPEAL

The government respectfully submits this opposition to the defendant's motion for release pending appeal, motion to receive jury room extraneous documents, and motion to extend his report date to May 2021 (Dkt. Nos. 367, 370, and 384). Reynolds has not identified a "substantial issue" for appeal, let alone one that demonstrates the likelihood of success required to support a stay of his sentence. Although it is difficult to tell exactly what he is claiming, none of the issues that he raises (*e.g.*, he appears to claim that he is entitled to a new trial due to alleged juror and government misconduct) was properly preserved during the original district court proceedings, is supported by the facts or record, or has merit. In the absence of a coherent explanation of why the district court committed an error of the magnitude that would likely require his convictions to be vacated, there is no basis for staying Reynolds's sentence pending the outcome of his appeal. For these same reasons, and those set forth below, the defendant's motion to receive jury room extraneous documents and motion to extend his report date should also be denied.

FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2018, Reynolds and his two co-defendants, M. Jay Herod and Kenneth Stromsland, were arrested on a complaint charging them with securities fraud in connection with

the promotion of and manipulative trading in the shares of biotech start-up PixarBio.  *See* Dkt. Nos. 3, 15.  There was never any challenge made to the probable cause determination supporting the defendant's arrest and never any finding of lack of probable cause for that arrest or any other defect in the complaint affidavit.

Incident to the arrests, law enforcement agents seized a total of five mobile phones – three from Reynolds, one from Herod, and one from Stromsland.  Two days later, on April 26, 2018, the government submitted an application for a warrant to search two of Reynolds's phones as well as the phones of Herod and Stromsland.  The Honorable M. Page Kelley issued the search warrant the same day.

On May 22, 2018, the grand jury returned an indictment charging Reynolds and Herod with two counts of securities fraud, and on February 26, 2019, the grand jury returned a superseding indictment charging Reynolds with one count of securities fraud and two counts of obstruction of an agency proceeding.  *See* Dkt. Nos. 26, 105.

Prior to trial, the defendant filed (among other pretrial motions) a motion to suppress evidence obtained from the phones seized at the time of arrest.  *See* Dkt. No. 134.  In support of his motion, Reynolds argued, first, that the search warrant for examination of the phones was based on a materially false allegation in the supporting affidavit and, second, that the affidavit did not sufficiently establish probable cause.  With respect to the first argument, the defendant claimed that the affidavit's description of a text message between Herod and an acquaintance of his was inconsistent with a related statement made in an FBI 302 report of an interview with Herod's acquaintance.  The government disputed the grounds for suppression but ultimately represented that it did not intend to use any evidence from the phones in its case-in-chief at trial, rendering the motion moot.  *See* Dkt. No. 172.  No evidence from the phones was introduced at any stage of

trial.

Following a 14-day trial, a jury convicted Reynolds of all four charges in the superseding indictment.  *See* Dkt. No. 229.  On the 13th day of trial – Friday, October 25, 2019 – following closing arguments and jury instructions, the jury was sent to deliberate.  *See* Dkt. No. 227.  The following Monday morning, the final day of trial, one of the jurors reported running late and not feeling well.  *See* Dkt. No. 228.    After consulting with counsel, the clerk made further inquiry.  *See id.*  Based upon the reported illness, and with the agreement of counsel for both parties, the Court dismissed the juror in question, seated an alternate juror, and instructed the jury to restart deliberations, which they did beginning around 11:00 that morning.  *See id.*

At about 1:40 that afternoon, the Court convened a lobby conference with counsel for both parties and the defendant.  *See* Dkt. No. 314, Sealed Transcript of Jury Trial Day Fourteen (Lobby Conference).

**[REDACTED DUE TO MATERIAL UNDER SEAL]**

**[REDACTED DUE TO MATERIAL UNDERAL SEAL]**

At 3:15 that afternoon (after submitting a question to which the Court, after consultation with counsel, returned a written response), the jury notified the Court that it had a verdict. *See* Dkt. No. 228.  The verdict was returned in open court at 3:40 p.m. *See id.*  Defense counsel requested that the Court poll the jury, which the Court did, and all jurors indicated agreement with the verdict. *See* Dkt. No. 386 at 28.  At that point, the Court asked if there was anything further, and defense counsel responded, "No, Your Honor." *Id.* at 29.

On November 12, 2019, the defendant moved for acquittal or, in the alternative, for a new trial. *See* Dkt. No. 235.  In that motion, the defendant argued that the evidence at trial was not sufficient to sustain his convictions and that the interest of justice required a new trial based upon the government's handling of an allegation regarding co-defendant and trial witness Jay Herod. *See id.*  The motion did not raise any issue concerning the alleged juror misconduct, lack of probable cause for arrest, or falsified evidence now raised in the defendant's motion for release pending appeal. *See id.*

On February 13, 2020, during the defendant's sentencing hearing, the Court denied the defendant's motion for acquittal/a new trial. *See* Dkt. No. 269.  The Court found that it was clear a reasonable jury could fairly have found the defendant guilty of the charges based on the evidence presented, that the defendant had an adequate opportunity to pursue the Herod allegation, and that there was "nothing in that aspect of the motion for new trial or for judgment of acquittal that [was] supportable." Dkt. No. 376 at 3–4.  Also during the hearing, the Court addressed the defendant's motion (filed prior to sentencing) requesting a copy of the sealed transcript of the lobby conference discussed above. *See* Dkt. No. 249.  The Court stated that it would provide the transcript to counsel

on the condition that Reynolds submit a declaration that he would not contact, directly or indirectly, any juror. Dkt. No. 376 at 57–58. The defendant thereafter filed an affidavit declaring that he had requested a copy of the transcript for use in judicial proceedings and for no other purpose and that he would not contact any juror or publicly discuss any juror except in connection with a legal filing. *See* Dkt. No. 272.

On February 18, 2020, during the defendant's continued sentencing hearing, the Court again raised concerns regarding the defense's request for access to the lobby conference transcript. *See* Dkt. No. 286 at 3–6. The Court noted its responsibility to ensure that jurors are not contacted in a way that might be viewed as harassment and inquired as to what judicial proceedings the transcript may be relevant. *Id.* at 3–4. Counsel for the defendant responded: "It would be this case and appeal." *Id.* at 3. The Court noted that the case before the district court was going to be ending that day (upon imposition of the defendant's sentence). *Id.* at 4. Counsel for the defendant asserted that the transcript could be relevant to "[w]hatever direct and collateral attacks Mr. Reynolds may have." *Id.* The Court reminded the defense of the need to raise issues with the district court in the first instance, explaining, "if a collateral attack or something that is a foundation for a collateral attack is not made in connection with the direct case, it has additional problems." *Id.* The Court specifically expressed a concern about sandbagging, stating, "what I am concerned about is that this is being banked as a hostage to fortune that is not being presented fairly and square-up in this court so that I can deal with it in this court if there's some issue." *Id.* The defendant nonetheless did not raise any issue about juror misconduct (or any of the other issues now raised in his motion for release pending appeal) at that time or at any point prior to his filing a notice of appeal.

The Court ultimately sentenced Reynolds to seven years in prison and three years of

supervised release, *see* Dkt. No. 291, after finding that, "among economic crimes, this is as serious [an] offense as I've encountered[.]" Dkt. No. 286 at 77.  Reynolds filed a timely notice of appeal, *see* Dkt. No. 300, and has elected to represent himself in connection with the appellate proceedings.

Upon the defendant's motion and with the government's assent, this Court has now thrice extended Reynolds's report date, based largely on concerns surrounding the ongoing COVID-19 pandemic and difficulties presented by Reynolds's pro se status.  *See* Dkt. Nos. 316–318, 355–356, 371, 373–374.[1]  The defendant's current report date is November 15, 2020. *See* Dkt. No. 374.

Beginning in June 2020, Reynolds filed three successive motions in the First Circuit seeking a stay of his sentence pending appeal.  The government opposed the motions, pointing out (among other things) that the defendant had not sought a stay of his sentence in the district court. The First Circuit denied each of the motions without prejudice to renewal/consideration in the district court.

On August 31, 2020, Reynolds filed the instant motion in this Court seeking release pending appeal.  *See* Dkt. No. 367.  On September 4 and 9, 2020, he filed two memoranda in support of the motion.  *See* Dkt. Nos. 372 and 375, respectively.  Reynolds's motion, although difficult to decipher, appears to identify the following as potential substantial issues on appeal:

(1)   Unpreserved claim as to alleged juror misconduct in connection with the above-discussed extraneous documents brought into the jury room;

(2)   Unpreserved and factually mistaken claims of alleged falsification of evidence in support of the arrest warrant and indictment, which appear to be largely based upon the defendant's incorrect understanding that there was a finding of lack of probable cause for his arrest;

(3)   Unpreserved claims that the government withheld exculpatory evidence, which appear to be largely based on the defendant's mistaken assertion that the government

---

[1] With respect to Reynolds's third motion to extend his report date to November 15, 2020, the government assented to an additional 30-day extension (to October 15, 2020) but opposed the full 60-day extension sought by the defendant.  *See* Dkt. No. 373.

had an affirmative obligation to gather, produce, and introduce at trial evidence that the defendant believes would have been helpful to him;

(4)    A variety of other claims that were not raised in connection with the district court proceedings and/or are irrelevant to the validity of the verdict, including:

    (i)    Statements made during trial and in connection with sentencing about Reynolds himself and PixarBio's NeuroRelease product;

    (ii)    Claims about InVivo and related patents that were not part of the evidence or issues presented at trial;

    (iii)    Claims about the SEC civil proceeding and other civil litigation, the SEC asset freeze, and criminal asset forfeiture; and

    (iv)    A variety of other unsupported and/or incorrect factual allegations, accusations, and ramblings.

*See* Dkt. Nos. 367, 367-1 at 6–7 and 15, 372, 375.

On September 16, 2020, Reynolds filed a motion to extend his report date to May 10, 2021. *See* Dkt. No. 384, which appears to rely upon the same arguments raised in support of his motion for release pending appeal.

ARGUMENT

Reynolds's motion for release pending appeal should be denied because he has failed to set forth a – nor is there any – substantial question of law or fact as required to support a stay of his sentence. The primary issues that he appears to be raising were not properly raised or preserved during these proceedings, and none has any merit. Many of his assertions are simply indecipherable and/or are irrelevant to the validity of the verdict.

To warrant a stay of his sentence, Reynolds has the burden of establishing that his appeal raises a substantial question of law or fact, which, if decided in his favor, is likely to result in reversal of his convictions, a new trial, or a non-jail sentence. *See* 18 U.S.C. § 3143(b)(1)(B); *United States v. Bayko,* 774 F.2d 516, 520–523 (1st Cir. 1985). A "substantial question" is one that is "close" in the sense that, on appeal, it "very well could be decided the other way." *Bayko,*

774 F.2d at 520–23.  The "likelihood prong" requires the defendant to demonstrate that "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for new trial on all counts on which imprisonment has been imposed." *Id.* In other words, the statute imposes "a requirement that the claimed error not be harmless or unprejudicial." *Id.* at 523.  Moreover, the mere "possibility of reversal" is not enough to justify release pending appeal. *Id.*

Where, as here, any issues raised by the defendant on appeal have been waived because they were not raised before the district court and/or are without merit, let alone sufficient to overturn the verdict, there is no legal basis for such a stay.

I.     THE ISSUE OF THE EXCUSED JUROR'S REVIEW OF EXTRANEOUS MATERIAL HAS BEEN WAIVED AND DOES NOT RISE TO THE LEVEL OF A SUBSTANTIAL QUESTION.

The defendant argues that potential juror misconduct raises a substantial issue for appeal. He is incorrect for multiple reasons.  First, he did not raise an objection to this Court's handling of the issue in connection with these proceedings and has therefore waived the issue.  Second, the juror in question was excused from the jury, and the Court handled the issue appropriately with respect to the remaining jurors.

A.     The Defendant Waived Any Issue of Juror Misconduct by Failing to Object When the Issue Was Disclosed during Trial or at Any Time Before Appeal.

No claim relating to the review of extraneous material by a juror can raise a substantial issue for appeal because the defendant failed to object to the procedure used by the Court to address the issue at the time it was raised, nor did he raise the issue at any other time prior to the verdict or even in his post-trial motion for acquittal/a new trial.  The defendant has therefore waived the issue for purposes of his appeal.  As the First Circuit has explained:

> [A] defendant's failure to raise a claim of juror bias until after trial, when the issue
> of potential bias was known by the defendant during trial, amounts to a waiver of

> the claim.  Other circuits that have discussed the issue uniformly agree.  Any other rule would allow defendants to sandbag the court by remaining silent and gambling on a favorable verdict, knowing that if the verdict went against them, they could always obtain a new trial by later raising the issue of juror misconduct.

*United States v. Costa*, 890 F.2d 480, 482 (1st Cir. 1989) (citation omitted).  *See also United States v. Desir*, 273 F.3d 39, 43 (1st Cir. 2001) ("[W]e have previously held that a defendant who has knowledge of juror misconduct or bias at the time of trial waives such a claim by failing to raise it until after trial."); *United States v. Rowe*, 144 F.3d 15, 20–21 (1st Cir. 1998) (rejecting challenge to district court's handling of issue involving Juror B as "governed by the [anti-sandbagging] rule that 'a defendant's failure to raise a claim of juror bias until after trial, when the issue of potential bias was known by the defendant during trial, amounts to a waiver of the claim.'"); *United States v. Morris*, 977 F.2d 677, 685–688 (1st Cir. 1992) (where defense was aware of potential impropriety in jury deliberations before verdict but did raise any objection until after verdict, objection was waived).  As explained by the Court in *Morris*, "We will not allow counsel to stand by quietly and gamble on a favorable verdict, only to complain when it turns out to be otherwise." *Id.* at 686.

Moreover, the First Circuit has specifically held that the failure to ask for dismissal of a juror in the face of a claim of misconduct waives the claim.  *See United States v. Kelly*, 722 F.2d 873, 881 (1st Cir. 1983).  Here, the defendant not only failed to ask for dismissal of any of the remaining jurors, but he also assented to the Court's handling of the issue and did not ask for further inquiry.  *Cf. id.* (defendant specifically asked for further inquiry of the juror and the court denied the request).  Thereafter, he did not raise the issue again in connection with these proceedings, even in the face of this Court's warning of the need to raise issues with the district court in the first instance.  As noted above, this Court explicitly stated its concern about

sandbagging with respect to the juror issue.  *See* Dkt. No. 286 at 4.  The defendant failed to heed

the Court's warning and instead filed a notice of appeal.

"It is a bedrock rule that when a party has not presented an argument to the district court,

she may not unveil it in the court of appeals."  *United States v. Slade*, 980 F.2d 27, 30 (1st Cir.

1992) (citations omitted).  "Phrased another way, a party is not at liberty to articulate specific

arguments for the first time on appeal simply because the general issue was before the district

court."  *Id.* at 31.  As the First Circuit has explained:

> Ordinarily, a party who fails to lodge an objection or raise an argument below is
> deemed to have forfeited the argument and faces plain error review.  But where a
> party "intentional[ly] relinquish[es] or abandon[s] ... a known right" and that right
> is waivable, he may not revive his waived argument on appeal at all.

*United States v. Delgado-Sanchez*, 849 F.3d 1, 6 (1st Cir. 2017) (citations omitted).  By failing to

object in the face of repeated opportunities to do so, the defendant intentionally abandoned any

rights he may have had with respect to the excused juror's conduct and so he may not raise it on

appeal.  Even if he were deemed to have merely forfeited the argument, for all of the reasons

discussed below, there was no error – let alone plain error – here.[2]

> **B.**     **This Court Appropriately Handled the Excused Juror's Review of**
>            **Extraneous Material.**

Even if it had been properly raised in the district court, the alleged juror misconduct does

not raise a substantial issue on appeal because this Court handled the matter appropriately.

---

[2] To show plain error, the defendant would have to show "(1) that an error occurred (2)
which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4)
seriously impaired the fairness, integrity, or public reputation of the judicial proceedings."  *United
States v. Arsenault*, 833 F.3d 24, 29 (1st Cir. 2016) (alteration in original) (quoting *United States
v. Ruiz-Huertas*, 792 F.3d 223, 226 (1st Cir. 2015)).

### 1.   Standard of Review

The First Circuit reviews the adequacy of a district court's investigation of and response to evidence of juror bias or misconduct for abuse of discretion, "recogniz[ing] that the district court has wide discretion in deciding how to handle and how to respond to allegations of juror bias and misconduct that arise during a trial." *United States v. Tejeda*, 481 F.3d 44, 52 (1st Cir. 2007) (internal quotation marks omitted).   A district court's finding that a juror is credible and that the jury is impartial is reviewed for clear error. *United States v. Burgos-Montes*, 786 F.3d 92, 110–11 (1st Cir. 2015).

### 2.   The Court Conducted a Sufficient Inquiry into the Juror Issue.

"Where a colorable claim of jury taint surfaces before jury deliberations occur, . . . [t]he judge should investigate the allegation promptly, addressing whether the taint-producing event occurred, and if so, assessing the magnitude and extent of any prejudice caused." *Tejeda*, 481 F.3d at 52.   As the First Circuit explained in *United States v. Wright*, 937 F.3d 8, 20 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 1283, 206 L. Ed. 2d 264 (2020), "[w]hile a district court must make an 'adequate inquiry' into non-frivolous claims of juror bias or misconduct, the district court has 'broad discretion to determine the type of investigation [that] must be mounted.'" *Id.* (citations omitted).   *See also United States v. Ramirez-Rivera*, 800 F.3d 1, 41 (1st Cir. 2015) ("[T]he trial judge is vested with the discretion to fashion an appropriate and responsible procedure to determine whether misconduct actually occurred and whether it was prejudicial.") (internal quotation marks omitted).   "If the court determines that there is a taint-producing event and a significant potential for prejudice, the trial court should then examine whether prophylactic measures will alleviate the prejudice (and if so, take them), or whether the threat can otherwise be dispelled or disproved." *Tejeda*, 481 F.3d at 52.   "It is the circumstances of each case that will

12

determine the level of inquiry necessary." *United States v. Rodriguez*, 675 F.3d 48, 61 (1st Cir. 2012).

Here, the Court's response to the juror issue here was prompt, reasonable, and sufficient to alleviate any potential prejudice.

**[REDACTED DUE TO MATERIAL UNDER SEAL]**

**[REDACTED DUE TO MATERIAL UNDER SEAL]**

The First Circuit has found it within the district court's discretion to decline to question all jurors about an allegation of bias or misconduct involving only one or a subgroup of them based on credible statements that other jurors were not affected. *See Wright,* 937 F.3d at 20 (holding no abuse of discretion where the district court dismissed only the juror who had paid for FBI agent's restaurant bill but declined to question the remaining jurors about what the dismissed juror had told them); *United States v. Camacho-Santiago*, 851 F.3d 81, 87–89 (1st Cir. 2017) (holding district court did not abuse its discretion where, in response to information that one juror had recognized a witness and told one other juror, it excused the first juror and questioned the second juror, but accepted those jurors' representations that no other jurors were told); *United States v. Therrien*, 847 F.3d 9, 18 (1st Cir. 2017) (holding district court did not abuse its discretion where it refused to "poll[] the entire jury" regarding who had seen an improperly accessed text message in the jury room but instead relied on representations of the jury foreperson and the juror who operated the phone); *United States v. Ramirez-Rivera*, 800 F.3d 1, 40–41 (1st Cir. 2015) (holding district court did not abuse its discretion in declining to interview other jurors regarding taint potentially caused by a juror who was excused after she expressed anxiety about serving, where

the juror credibly stated that she had not "communicate[d] her fears or anxieties to any other member of the jury").

The defendant's reliance upon *United States v. Zimny*, 846 F.3d 458 (1st Cir. 2017) and 857 F.3d 97 (1st Cir. 2017), is misplaced. *Zimny* involved a failure to investigate – in the face of repeated requests and objections by the defense at the time – actual taint as to a juror who *remained* on the jury. 846 F.3d at 464–65. And, in *Zimny*, the First Circuit concluded that it was reasonable for the district court to have limited the original investigation to only the juror as to which there was then any evidence of taint. *Id.* at 467.

### [REDACTED DUE TO MATERIAL UNDER SEAL]

This was entirely reasonable and unchallenged by the defendant and his counsel at the time.

Moreover, once the verdict was returned, the defense asked that the Court question the jurors about only one thing – whether each juror concurred in the verdict. The Court then polled the jury and all twelve jurors verbally concurred. As the court in *United States v. Blumberg*, No. CRIM. 00-10-B-S, 2000 WL 1511194, at *6 (D. Me. Oct. 5, 2000), noted in rejecting a claim of juror misconduct:

> [T]he jury in this case was polled thereby establishing prima facie evidence of the verdict's validity. *See Morris,* 977 F.2d [677] at 689 [(1st Cir. 1992)] ("A juror's acceptance of the verdict upon polling constitutes prima facie evidence of his/her participation in deliberations, lack of irregularity therein, and concurrence in the outcome, and said verdict should not be disturbed absent extraordinary circumstances.").

*Id*. Here, both the fact that the jury was polled and the fact that the defense requested no further questioning of the jury after the verdict demonstrates that any challenge to the verdict based upon the conduct of the excused juror does not raise a *Bayko* issue.

15

II.    THERE IS NO BASIS FOR THE DEFENDANT'S CLAIMS REGARDING FALSIFICATION OF EVIDENCE.

A.    The Defendant is Incorrect in His Claim That This Court Ruled That There Was No Probable Cause to Arrest Him.

Reynolds also asserts that evidence was falsified by the FBI and the SEC to support his arrest and indictment.  This claim is untrue.  It is unsupported by any evidence in the record.  Likewise, the defendant's claim that this Court found a lack of probable cause for his arrest is simply wrong.

The defendant's extensive argument on this point seems to be based upon a misunderstanding of the difference between the arrest warrant and the above-described search warrant for his phones.  There was never any challenge to, let alone any finding of a lack of, probable cause for the arrest.  Moreover, the grand jury subsequently found probable cause for the charges against the defendant contained in the indictment and then the superseding indictment.

As noted above, the defendant, in his motion to suppress evidence from his phones, did contend that there was a false statement made in the search warrant affidavit.  Although the government disputes this characterization, it agreed not to use any evidence from the phones in its case-in-chief and did not do so.  Thus, any issue concerning the affidavit in support of the search warrant is moot.

B.    The Defendant's Other Claims of Falsification of Evidence or Perjurious Testimony Are without Any Basis and Were Not Raised in the District Court.

At various points in his extensive filings, the defendant also asserts that other evidence was or could have been falsified, speculates as to who may have falsified evidence, asks rhetorical questions about what other evidence may have been falsified, and asserts that testimony was perjured.  There is no basis in the record to support any such claim of falsification or perjury.  Nor were these unspecified claims raised or preserved in the district court proceedings.  Such

16

unsupported, rambling allusions to imagined falsification of evidence certainly do not raise a *Bayko* issue.

III.    THE DEFENDANT'S CLAIMS OF DISCOVERY VIOLATIONS ARE WITHOUT MERIT AND HAVE BEEN WAIVED.

Reynolds also raises a litany of claims of discovery violations but fails to identify any actual discovery issues, let alone any that were preserved as issues for appeal.  To the contrary, having been afforded ample opportunity for additional discovery – even in the midst of trial – the defendant did not request anything further.  As discussed in the government's opposition to the defendant's motion for acquittal/a new trial (Dkt. No. 235, incorporated herein by reference), having failed to seek such discovery or additional time – or even raise these alleged issues – before or during trial, the defendant cannot prevail on them on appeal.  *See, e.g., United States v. Sepulveda*, 15 F.3d 1161, 1178 (1st Cir. 1993) ("When discovery material makes a belated appearance, a criminal defendant must ordinarily seek a continuance if he intends to claim prejudice. . . .  As a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he suffered prejudice as a result of late-arriving discovery.") (citations omitted); *United States v. Diaz-Villafane*, 874 F.2d 43, 47 (1st Cir. 1989) (noting that a defendant's claim "that he was unfairly surprised is severely undermined, if not entirely undone, by his neglect to ask the district court for a continuance to meet the claimed exigency").

In addition, all of the defendant's newfound claims of discovery violations are entirely without merit.  Indeed, most appear to stem from the defendant's misapprehension that the government was required to gather evidence for his benefit, rather than turn over the evidence in its possession.  There is no such obligation.  "The government's obligations under *Brady* only extend to information in its possession, custody, or control."  *United States v. Hall,* 434 F.3d 42, 55 (1st Cir.2006).  "*Brady*... [does not] require[ ] a prosecutor to seek out and disclose exculpatory

17

or impeaching material not in the government's possession." *United States v. Bender,* 304 F.3d 161, 164 (1st Cir. 2002).

Moreover, much of the evidence about which Reynolds now claims discovery violations appears to be information he had in his possession or was aware of in any event – such as PixarBio's interactions with Purdue Canada or its own accountants.  There can be no "suppression" of evidence by the government when the evidence is already known to the defendant.  And, as explained by the Fifth Circuit in *United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir. 1985), "*Brady* does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence.  When evidence is available equally to the defense and the prosecution, the defendants must bear the responsibility of their failure to diligently seek its discovery."  *Id.* (citations omitted).

In short, the defendant's belated, unpreserved, and meritless claims of discovery violations do not raise any *Bayko* issue.

## IV. THE DEFENDANT'S OTHER CLAIMS SIMPLY DO NOT RAISE ISSUES RELEVANT TO THE VALIDITY OF THE VERDICT.

The remainder of the defendant's claims are not only unpreserved, but simply do not raise anything that would be relevant or material to the validity of the verdict.  Speculation about the impact of the verdict on alleged competitors such as Purdue Pharma does not even raise a legal or factual issue with respect to the trial.  The defendant's continued claims about his intention to create a product to replace opioids just demonstrates that he continues to make false statements about PixarBio and its product and should be in prison where it will be more difficult for him to seek to continue perpetuating this fraud.  Reynolds's repeated assertions that NeuroRelease is real and that he is not oblivious to reality are simply not legal issues, let alone a basis for release pending appeal.

The defendant's claims about InVivo, patents, and the SEC proceedings and asset freeze are likewise irrelevant to whether he should be released pending appeal.  The fact that this case was not charged as a Ponzi scheme or an insider trading case is also irrelevant.

V.    THE TIMING OF THE DEFENDANT'S MOTION SUGGESTS THAT IT IS FOR THE PURPOSE OF DELAY.

Reynolds avers that his motion is not for the purpose of delay.  However, the timing of the motion indicates otherwise.  Rather than file his motion for stay pending appeal at any time in the more than six months that he has been scheduled to report, the defendant waited until the last minute to properly file the motion with this Court.  The First Circuit instructed him on multiple occasions to file in the district court in the first instance, but he ignored those instructions until just two weeks before his then-scheduled report date.  There is simply no reason why the defendant could not have filed this motion shortly after his sentencing in February 2020.  Moreover, the Court has already granted the defendant three deferrals of his report date – which has provided him with plenty of time to work on his appeal.  Thus, the delay in filing suggests that the defendant is trying to use this motion, and the need for this Court (and possibly the First Circuit thereafter) to have time to consider it, as a way to further delay his report date.  Such an attempt on such a meritless motion should not be rewarded.  Moreover, the defendant's continued promotion of false claims about PixarBio's prospects suggest that he does in fact remain a danger to the community.

Finally, the defendant's assertion that it would be more difficult for him to prepare his appeal from prison is not a basis for release pending appeal.  It simply is not a factor in the *Bayko* analysis and it is the defendant's choice to proceed pro se.  Moreover, many defendants do prepare many complex and pro se appeals while incarcerated.

CONCLUSION

For the foregoing reasons, the defendant's motion for release pending appeal should be

denied.  For the same reasons, his motion to receive jury room extraneous documents and motion

to extend his report date to May 2021 should also be denied.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ Sara Miron Bloom
        SARA MIRON BLOOM
        LESLIE A. WRIGHT
        Assistant United States Attorneys
        John Joseph Moakley United States Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3265

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered participants.

/s/ Sara Miron Bloom
Assistant United States Attorney

Date: September 23, 2020