# United States Court of Appeals
## For the First Circuit

No. 20-1268

UNITED STATES,

Appellee,

v.

FRANCIS M. REYNOLDS, a/k/a Frank Reynolds,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Francis M. Reynolds on brief pro se.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Nathaniel R. Mendell, Acting United States Attorney, Sara
Miron Bloom, Assistant United States Attorney, and Leslie Wright,
Assistant United States Attorney, were on the brief, for appellee.
Judith H. Mizner, Assistant Federal Defender for The Office
of the Federal Defender, Districts of Massachusetts, New Hampshire
and Rhode Island, amicus curiae.

April 9, 2024

**BARRON**, **Chief Judge**.  The appellant in this direct criminal appeal died while it was pending before our court.  We thus confront the question of whether, to dispose of this appeal, we should apply the doctrine of abatement ab initio or follow some other course.

Under the abatement doctrine, when a criminal defendant dies during the pendency of a direct appeal from his conviction, "his death abates not only the appeal but also all proceedings had in the prosecution [of the underlying indictment] from its inception," United States v. Libous, 858 F.3d 64, 66 (2d Cir. 2017) (quoting United States v. Wright, 160 F.3d 905, 908 (2d Cir. 1998)), such that the conviction must be vacated and the underlying charge dismissed, see id.  We have not previously recognized the doctrine in a precedential ruling.  But we have routinely applied it in unpublished rulings, and every other federal court of appeals that hears direct criminal appeals has adopted the doctrine in a published (and therefore precedential) decision.[1]  The government

---

[1] See United States v. Moehlenkamp, 557 F.2d 126, 127-28 (7th Cir. 1977); United States v. Bechtel, 547 F.2d 1379, 1380 (9th Cir. 1977); United States v. Littlefield, 594 F.2d 682, 683 (8th Cir. 1979); United States v. Pauline, 625 F.2d 684, 685 (5th Cir. 1980); United States v. Dudley, 739 F.2d 175, 176 (4th Cir. 1984); United States v. Wilcox, 783 F.2d 44, 44 (6th Cir. 1986) (order); United States v. Mollica, 849 F.2d 723, 726 (2d Cir. 1988); United States v. Schumann, 861 F.2d 1234, 1236 (11th Cir. 1988); United States v. Davis, 953 F.2d 1482, 1486 (10th Cir. 1992); United States v. Pogue, 19 F.3d 663, 665 (D.C. Cir. 1994); United States v. Christopher, 273 F.3d 294, 297 (3d Cir. 2001); see also United States v. Ribaudo, 62 M.J. 286, 287 (C.A.A.F. 2006).

urges that we nonetheless reject the doctrine as unsound.  It then contends that we should either simply dismiss this appeal as moot or, at most, follow the practice of the Supreme Judicial Court of Massachusetts and dismiss the appeal as moot while instructing the District Court to add a notation in the record "that the defendant's conviction removed the presumption of innocence, that the conviction was appealed, and that the conviction was neither affirmed nor reversed because the defendant died while the appeal was pending."  See Commonwealth v. Hernandez, 118 N.E.3d 107, 121 (Mass. 2019) (adopting this procedure).

Having carefully considered the government's position, we reject it and thereby align ourselves with the other federal courts of appeals and our own past decisions in recognizing the abatement doctrine.  Accordingly, we dismiss the appeal and remand for the District Court to vacate the convictions at issue and dismiss the indictment.  In addition, in accord with the government's own understanding of what must follow from the abatement doctrine's application, we instruct the District Court on remand to vacate the orders of restitution and criminal forfeiture that were imposed in this case, as well as the special assessment.  See Nelson v. Colorado, 581 U.S. 128, 135-36 (2017).

**I.**

In the fall of 2019, after a fourteen-day trial, a jury in the United States District Court for the District of

- 3 -

Massachusetts found Francis M. Reynolds guilty of three counts of obstruction of a United States Securities and Exchange Commission proceeding, 18 U.S.C. § 1505, and one count of securities fraud, 15 U.S.C. §§ 78j(b), 78ff(a). The District Court entered the judgment of conviction against Reynolds and sentenced him to a term of imprisonment of seven years plus three years of supervised release. The District Court also ordered Reynolds to pay restitution to the victims of his fraud in the amount of $7,551,757 and a special assessment of $400. In addition, the District Court ordered Reynolds to forfeit $280,000 to the United States pursuant to the criminal judgment.

The government thereafter filed a motion for the forfeiture of 47,905,567 shares of a company called PixarBio that Reynolds held, in partial satisfaction of the forfeiture order. The District Court granted the motion on July 12, 2021.

Reynolds timely filed this appeal on March 20, 2020. Although Reynolds was represented by counsel through sentencing, he elected to proceed pro se on appeal. In his opening brief, he challenged his convictions as well as the restitution and criminal forfeiture orders.

Briefing was complete and the appeal was pending in this Court when the government filed a suggestion of death, informing the Court that Reynolds had died on January 9, 2022, while in the custody of the U.S. Bureau of Prisons. The government moved in

this same filing for appointment of counsel "for the other side" and asked us to order briefing on "what procedural consequences should follow from Reynolds's death."

We denied the government's motion for appointment of counsel without prejudice and instructed the government to serve its motion and our order on Reynolds's "personal representative(s)." Our order also provided that Reynolds's "personal representative(s)" should file any motion for substitution of parties with respect to the pending appeal in our Court within thirty days of being served by the government.

The government filed a response that stated that the only person it found "who might be considered his representative" was Reynolds's surviving spouse, who upon being provided with the government's suggestion of death and our order in response to it responded that she had no intention of participating in this case. The government further represented that Reynolds's surviving spouse stated that she was not aware of any pending probate matter nor of any will belonging to her late husband. The government also represented that while it had attempted to explain the potential effect of the application of the doctrine of abatement ab initio on any of Reynolds's assets, it was "unclear whether Ms. Reynolds fully understands the ramifications of the abatement issues pending before the Court."

After the deadline for Reynolds's personal

representative to respond to our order had passed, the government moved to appoint an amicus curiae to submit a brief in defense of the doctrine of abatement <u>ab initio</u>.  We appointed the Federal Public Defender for the Districts of Massachusetts, New Hampshire, and Rhode Island ("the Defender") to appear as amicus curiae to address this question.  The Defender urges us to resolve the question by applying the doctrine of abatement <u>ab initio</u>.  The Defender also agrees with the government that, if we do apply the abatement doctrine here, then under <u>Nelson</u> the restitution and criminal forfeiture orders, as well as the special assessment, cannot stand.  <u>See</u> 581 U.S. at 135-36.

We thank both the Defender and the government for ably briefing these issues.

## II.

We start with the question of whether there is any controlling precedent that dictates that the doctrine of abatement <u>ab initio</u> applies.  We conclude, as both the government and the Defender agree, that there is not.

That was not always the case.  In <u>Durham</u> v. <u>United States</u>, 401 U.S. 481, 481 (1971) (per curiam), the Supreme Court of the United States addressed the application of the doctrine in a case that involved a criminal defendant who had unsuccessfully challenged his federal conviction on direct appeal and who had died while his petition for certiorari was pending before the

- 6 -

Court.  The Court disposed of the petition by vacating the judgment of the court of appeals that had affirmed the petitioner's conviction and remanding with directions that the indictment be dismissed.  Id. at 483.

The Court noted that "the lower federal courts were unanimous" in holding that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception."  Id.  The Court acknowledged the potential distinction arising from the fact that direct appeals of federal criminal convictions "are a matter of right while decisions on certiorari petitions are wholly discretionary."  Id. at 483 n.*.  The Court concluded, however, that when a petitioner dies before the Court adjudicates a petition filed pursuant to his statutory "right to petition for certiorari . . . the distinction between [an appeal and certiorari review] would not seem to be important" to whether the doctrine applies. Id.

Five years later in Dove v. United States, 423 U.S. 325 (1976) (per curiam) the Court backtracked.  There, again, the Court was considering a petition for certiorari from a criminal defendant who was challenging a federal conviction on direct appeal when the Court was notified that the petitioner had died while the petition was pending.  Id. at 325.  Rather than disposing of the petition as Durham had, the Court simply dismissed the petition, stating

- 7 -

that, "[t]o the extent that Durham v. United States, 401 U.S. 481 (1971) may be inconsistent with this ruling, Durham is overruled." Id.

Ever since, the Supreme Court has followed the course charted in Dove. See, e.g., Walker v. United States, 140 S. Ct. 953 (2020) (mem.) ("It appearing that petitioner died on January 22, 2020, the petition for a writ of certiorari is dismissed."). Accordingly, there is no controlling Supreme Court precedent that either requires us to apply, or prohibits us from applying, the doctrine of abatement ab initio to dispose of a pending direct appeal from a federal conviction when the appellant dies during the pendency of that appeal.

There also is no controlling precedent from our Court that addresses whether we must apply -- or are barred from applying -- the doctrine in disposing of such an appeal. True, even after Dove, we have applied the doctrine with seeming regularity to dispose of an appeal of that kind. See, e.g., United States v. Sheehan, No. 93-1781 (1st Cir. Feb. 2, 1994), ECF No. 35 (dismissing the appeal and remanding to the district court with instructions to vacate the judgment of conviction and to dismiss the superseding indictment); United States v. Merlino, No. 03-1041 (1st. Cir. Apr. 14, 2006), ECF No. 102 (same); United States v. Ferrer-Ramos, No. 04-2294 (1st Cir. July 21, 2005), ECF No. 54 (same); United States v. Parra-Palomeque, No. 05-1677 (1st Cir.

- 8 -

July 9, 2007), ECF No. 77 (same on joint motion from government and defense counsel); United States v. Powell, No. 14-1231 (1st Cir. Oct. 20, 2014), ECF No. 20 (same on defendant's unopposed motion); United States v. Carter, No. 17-1738 (1st Cir. Oct. 11, 2017), ECF No. 19 (same); United States v. Tejeda-Serrano, No. 18-1029 (1st Cir. May 1, 2018), ECF No. 20 (same); United States v. Sanchez-Alvarado, No. 18-1972 (1st Cir. June 2, 2020), ECF No. 34 (same on government's motion); United States v. Cotto-Hernandez, No. 18-2018 (1st Cir. Feb. 20, 2020), ECF No. 44 (same sua sponte upon learning of defendant's death); United States v. Crosby, No. 19-1782 (1st Cir. Mar. 1, 2021), ECF No. 69 (same on parties' joint motion); United States v. Valle, No. 21-1604 (1st Cir. Sep. 20, 2021), ECF No. 23 (same on joint motion). In fact, we are not aware of any instance in which we have ruled that the doctrine does not apply in such a circumstance.

But we have applied the doctrine only in non-precedential, unpublished rulings. Thus, as both the Defender and the government agree, the question at hand is an open one in the Circuit.

The government contends that it is important that we resolve in a precedential ruling whether the doctrine of abatement ab initio applies, as all the other circuits that hear direct criminal appeals have done so. We agree. We thus turn our attention to the doctrine's merits and the arguments concerning

them that have been advanced quite thoroughly by the Defender and
the government.  In assessing those arguments, however, we are
mindful that, although the question of whether the doctrine
warrants our recognition is technically one of first impression in
this Circuit, the doctrine comes to us firmly rooted in both the
precedents of the other circuits and our own practices.[2]  See
United States v. Zannino, 761 F.2d 52, 56 (1st Cir. 1985) ("[W]e

---

[2] The government does not suggest that there is a
jurisdictional bar to our applying the doctrine of abatement ab
initio to dispose of this appeal, and we are satisfied that there
is none.  To be sure, generally speaking, "if an event occurs while
a case is pending that makes it impossible for the court to grant
any effectual relief whatever to a prevailing party, the action
must be dismissed" as moot.  Harris v. Univ. of Mass. Lowell, 43
F.4th 187, 192 (1st Cir. 2022) (cleaned up); see also United States
v. Sampson, 26 F.4th 514, 516 (1st Cir. 2022) (per curiam)
(dismissing as moot appeal from capital sentence upon being
informed of the death of the defendant).  However, even assuming
that a defendant's death would moot a case notwithstanding the
continuing effect of the conviction on the defendant's estate, we
would still have jurisdiction to apply the doctrine of abatement
ab initio.  As a general matter, when a pending appeal becomes
moot, appellate courts may vacate the judgment below if doing so
is "'most consonant to justice' . . . in view of the nature and
character of the conditions which have caused the case to become
moot."  U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S.
18, 24-25 (1994) (quoting United States v. Hamburg-Amerikanische
Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 477-78 (1916));
Azar v. Garza, 584 U.S. 726, 729 (2018) ("Because this practice is
rooted in equity, the decision whether to vacate turns on 'the
conditions and circumstances of the particular case.'" (quoting
Hamburg-Amerikanische, 239 U.S. at 478)); see also United States
v. Volpendesto, 755 F.3d 448, 452 (7th Cir. 2014) (holding that
the defendant's "death has deprived us of the power to decide the
merits, but it does not defeat our authority to resolve the appeal
in response to the mootness of the underlying case").  We
understand the abatement doctrine, insofar as it is otherwise
sound, to be consonant with this exercise of authority.

do not lightly create a split among the circuits."); Shea v. United States, 976 F.3d 63, 85 (1st Cir. 2020) (Selya, J., dissenting) (observing that "the reasoned decisions of a large number of our sister circuits are, at the very least, entitled to respectful consideration").   But see Pinpoint IT Servs., LLC v. Rivera, Chapter 7 Trustee of Atlas IT Exp. Corp. (In re Atlas IT Exp. Corp.), 761 F.3d 177, 182-83 (1st Cir. 2014) (noting that "[t]he numbers [of other circuits] favoring a rule do not necessarily mean that the rule is the best one" and that "it is always incumbent on us to decide afresh any issue of first impression in our circuit").

**A.**

**1.**

The origins of the doctrine of abatement ab initio are not perfectly clear, but its application in the federal courts of appeals coincides with the advent in the late-nineteenth century of appeals from federal criminal convictions to the circuit courts.[3]   Indeed, by the mid-twentieth century, the doctrine appears to have been uniformly applied in the federal courts.  See

---

[3] Circuit courts were only authorized to hear "writs of error" in criminal convictions in 1879, and then only on a discretionary basis.  See Act of Mar. 3, 1879, ch. 176, 20 Stat. 354.  It was not until 1911 that jurisdiction over all direct appeals from criminal convictions was vested in the circuit courts.  See Act of Mar. 3, 1911, ch. 231, § 128, 36 Stat. 1087, 1133-34; see also, Marc M. Arkin, Rethinking the Constitutional Right to a Criminal Appeal, 39 UCLA L. Rev. 503, 521-25 (1992).

<u>Crooker</u> v. <u>United States</u>, 325 F.2d 318, 319 (8th Cir. 1963) (surveying pre-<u>Durham</u> abatement practices in federal court).

Consistent with the doctrine's connection to the statutory right to appeal, the primary rationale that underlies the doctrine is "grounded in procedural due process concerns," <u>United States</u> v. <u>DeMichael</u>, 461 F.3d 414, 416 (3d Cir. 2006), or, as it is sometimes put, concerns about the conviction's "finality," <u>Libous</u>, 858 F.3d at 66.  The notion is that the criminal defendant's death precludes the conviction from being tested on appeal despite the criminal defendant's attempt to invoke the statutory right to do so.  See <u>Moehlenkamp</u>, 557 F.2d at 128 (explaining that it is against the interests of justice for a person to "stand convicted without resolution of the merits of his appeal").

The government does not dispute this account of the doctrine's origins, but it argues that the finality rationale is unsound and so supplies no basis for our applying the doctrine to dispose of this appeal.  In fact, the government appears to argue that the doctrine is so unsound that it must be rejected despite its admittedly deep roots in federal appellate practice.  The government rests this argument in part on the Supreme Court's statement that "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears," <u>Herrera</u> v. <u>Collins</u>, 506 U.S.

- 12 -

390, 399 (1993), and in part on various aspects of the federal criminal process, reflected both in federal statute and the United States Sentencing Guidelines.

The government reasons that Herrera shows that the conviction in and of itself strips the defendant of a presumption of innocence. According to the government, therefore, the pendency of any direct appeal should have no bearing on whether to permit the conviction to stand in the wake of the appellant's death because "[a]n unreviewed criminal conviction is neither suspect nor lacking in finality in any relevant sense." Volpendesto, 755 F.3d at 454-55 (Sykes, J., concurring). The government emphasizes that several state high courts have rejected the finality rationale based, at least in part, on precisely this reasoning. See, e.g., State v. Devin, 142 P.3d 599, 604-05 (Wash. 2006) (citing Herrera and overruling prior precedent adopting abatement ab initio).

Notably, however, a number of circuits have relied on the finality rationale in applying the abatement doctrine even after Herrera. See, e.g., Volpendesto, 755 F.3d at 452; United States v. Estate of Parsons, 367 F.3d 409, 415 (5th Cir. 2004) (en banc); Libous, 858 F.3d at 66. And we see nothing in Herrera itself that would provide us with a basis for concluding that it is evident that those courts were mistaken to do so.

Herrera addressed whether a federal habeas petitioner could, years after his state criminal trial and unsuccessful direct

- 13 -

appeal, bring a federal habeas claim based not on an independent constitutional violation but on new evidence that assertedly proved his innocence. See 506 U.S. at 399-400. Herrera held only that claims of actual innocence are not "a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." See id. at 400. But see id. at 404 (noting that a proper showing of actual innocence can serve as "a gateway through which a habeas petitioner" may pass "to have his otherwise [procedurally] barred constitutional claim considered on the merits"). The Supreme Court thus had no occasion in Herrera to address the longstanding abatement doctrine itself, which, of course, by its terms applies only in the context of direct criminal appeals.

Nor does Herrera's reasoning undermine the strength of the finality rationale for the doctrine. We do not understand Herrera's emphasis on the impact of a conviction on the presumption of innocence in limiting claims of factual innocence in federal habeas actions to speak to the importance of the direct appeal in the criminal process more generally. The value of the right to such an appeal does not inhere in the opportunity that it provides for criminal defendants to demonstrate their factual innocence. Indeed, a common ground of challenge in such an appeal is one that is predicated on a claimed constitutional violation, which, of course, is the very ground that Herrera recognized could be brought

- 14 -

post-conviction.

There also is no want of Supreme Court authority to support the notion that undergirds the finality rationale for the abatement doctrine -- that the loss of the opportunity to pursue a direct appeal is significant. Indeed, the Supreme Court has described the direct appeal of a criminal conviction as "an integral part" of the process through which the judicial system "finally adjudicat[es] the guilt or innocence of a defendant." Griffin v. Illinois, 351 U.S. 12, 18 (1956) (emphasis added).

Herrera, then, hardly suffices to show that the calculus that has led to the consistent application of the abatement doctrine in the federal courts of appeals rests on a failure to recognize that a defendant who has been convicted is no longer presumed innocent. For, "[w]hile the trial court's judgment carries a presumption of validity, the very essence of a presumption is its vulnerability to refutation," Howell v. United States, 455 A.2d 1371, 1372 (D.C. 1983), and if a conviction is overturned on direct appeal, then the presumption of innocence is restored, see Nelson, 581 U.S. at 135; Johnson v. Mississippi, 486 U.S. 578, 585 (1988) (noting that after a "conviction has been reversed, unless and until [the defendant] should be retried, he must be presumed innocent of that charge").

The government is right that "several other features of federal law" besides Herrera reflect the import of a judgment of

- 15 -

conviction when entered -- and thus even prior to any appeal having been taken. The government highlights the higher statutory standard for bail pending appeal versus bail pending trial. Compare 18 U.S.C. § 3143(b)(A) (court "shall order" detention pending appeal unless it finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community" and that the appeal raises a "substantial question . . . likely to result in" reversal or resentencing to a shorter period of imprisonment than the pendency of the appeal is likely to take), with id. § 3142(e)(1) (court shall order defendant detained pre-trial only on finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). The government also points to the fact that a United States Sentencing Guideline includes a conviction pending appeal in the calculation of a convicted defendant's criminal history score. See U.S.S.G. § 4A1.2(a)(1).

But we do not understand our companion circuits in consistently applying the doctrine of abatement to have been laboring under the misapprehension that a conviction has legal significance only after it has been affirmed on direct appeal or the time for taking such an appeal has run with no appeal having been taken. We understand our companion circuits merely to have recognized what the Supreme Court itself recognized in

- 16 -

Griffin -- that the direct appeal is "an integral part" of the process for "finally adjudicating the guilt or innocence of a defendant." 351 U.S. at 18 (emphasis added). Thus, we see no fundamental contradiction between how federal law treats a federal conviction and the finality rationale for the abatement doctrine, as the rationale rests on the indisputably central role that direct appeals do play in the process by which a conviction is "finally adjudicate[d]." Id.

**2.**

The government separately challenges a second rationale that has been put forth for the abatement doctrine: because the punitive purpose of a criminal conviction cannot be fulfilled after a defendant dies, "the state should not punish a dead person or his estate." Estate of Parsons, 367 F.3d at 413; see also United States v. Pomeroy, 152 F. 279, 282 (C.C.S.D.N.Y. 1907); O'Sullivan v. People, 32 N.E. 192, 193-94 (Ill. 1892). Here, the government contends there is an irreconcilable tension between this rationale and "victims' rights," as the government argues the conviction continues to serve compensatory and expressive purposes after a defendant's death.

In support of this contention, the government points to two federal statutes, the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, §§ 201-11, 110 Stat. 1214, 1227-41 (codified as amended in scattered sections of 18 U.S.C.),

- 17 -

and the Crime Victims' Rights Act of 2004 ("CVRA"), Pub. L. No.
108-405, §§ 101-04, 118 Stat. 2260, 2261-65 (codified as amended
in scattered sections of the U.S. Code), both of which secure
certain rights for victims in federal criminal proceedings. At
oral argument, the government placed special emphasis on a
provision of the Justice for All Reauthorization Act of 2016, in
which Congress amended the MVRA to provide that "[i]n the event of
the death of the person ordered to pay restitution, the
individual's estate will be held responsible for any unpaid balance
of the restitution amount." Pub. L. No. 114-324, § 2(b), 130 Stat.
1948, 1948 (codified as amended at 18 U.S.C. § 3613(b)). But
insofar as the government means to suggest this provision is in
conflict with the abatement doctrine, we are not persuaded.

The text of this provision does not make clear that it
applies even to a restitution order that is pending on direct
appeal when the defendant dies. Thus, we do not understand this
provision to make "evident" a "statutory purpose" to overturn the
application of the abatement doctrine, a "long-established and
familiar principle[]" of federal criminal adjudication.
Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783 (1952); Samantar v.
Yousuf, 560 U.S. 305, 320 n.13 (2010) ("[W]hen a statute covers an
issue previously governed by the common law, we interpret the
statute with the presumption that Congress intended to retain the
substance of the common law."); see also Whitman v. Am. Trucking

- 18 -

Ass'ns, 531 U.S. 457, 468 (2001) ("Congress, . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes.").  And, insofar as the provision is not intended to preclude application of the abatement doctrine, and instead is intended merely to address circumstances in which a defendant dies after the direct appeal process has run its course, we see no basis for construing the provision in a way that would bring it into conflict with the principles of due process set forth in Nelson when the government itself does not make any argument that we must so construe it.  See Clark v. Martinez, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, . . . [i]f one of them would raise a multitude of constitutional problems, the other should prevail . . . .").

          The government also argues that application of the doctrine will "revive the trauma and pain that crime victims and their loved ones have already suffered."  But, as we have been emphasizing, the doctrine of abatement is not a novel doctrine. Its roots date back more than a century.  We thus see little reason to conclude that the doctrine has been applied in the federal courts of appeals without any thought having been given to the well-established notion that "in the administration of criminal justice, courts may not ignore the concerns of victims."  Morris v. Slappy, 461 U.S. 1, 14 (1983).  Instead, we understand the

doctrine to reflect a now well-established equitable judgment about the status to accord a federal conviction in the procedural posture at issue here, given that vacating such a conviction pursuant to the abatement doctrine "in no way undermines [victims'] right to use civil proceedings to vindicate their legal rights after the defendant's death." Volpendesto, 755 F.3d at 454.

**3.**

Notably, the government itself recognizes that there is a difference worth acknowledging between a conviction that was not appealed at all and a conviction that was challenged on appeal but could not be finally adjudicated on appeal due to the defendant's death. The government states that it would not object if we were to follow the lead of the highest state court in Massachusetts in dismissing this appeal as moot while also taking the additional step of instructing the District Court to add a notation on the public docket to the effect "that the defendant's conviction removed the defendant's presumption of innocence, but that the conviction was appealed from and it was neither affirmed nor reversed on appeal because the defendant died while the appeal was pending." Hernandez, 118 N.E.3d at 121.

The government's argument for rejecting the abatement doctrine, therefore, amounts to an argument that, although there is a noteworthy difference between an appealed and un-appealed conviction, that difference is not so great as to warrant the

equitable decision to vacate the former when the defendant dies before the appeal has been decided.  But, in the face of the established and uniform application of a doctrine that reflects the opposite equitable judgment by our fellow circuits, we are not persuaded.

True, the highest courts in a number of states have chosen to reject the doctrine.  See Hernandez, 118 N.E.3d at 119-21 (collecting cases).  But the highest court in the federal system has not purported to cast doubt on what it described many decades ago as the "impressive" "unanimity of the lower federal courts which have worked with this problem over the years" regarding the doctrine's legitimacy.  Durham, 401 U.S. at 483.  And no federal court of appeals in the decades since has seen fit to break with that unanimous consensus.

Given that direct appeals are no less integral to the federal criminal process than they were at the time that the Supreme Court described this still-reigning consensus as "correct," we see no reason to break with it.  We thus conclude that the doctrine of abatement ab initio applies here, and so dismiss this appeal with instructions for the district court to vacate Reynolds' convictions and dismiss the superseding indictment against him.

**B.**

There remains one additional question on which we

- 21 -

requested briefing: whether abating a conviction requires also vacating the special assessment, restitution, and forfeiture order imposed pursuant to the conviction.[4]   The government and the Defender both submit, based on the Supreme Court's decision in Nelson, that vacatur of the convictions does so require.  See 581 U.S. at 136 ("Colorado may not retain funds taken from [the defendants] solely because of their now-invalidated convictions . . . for Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions.").

Every circuit court to consider this question post-Nelson has reached this conclusion as well, see, e.g., United States v. Brooks, 872 F.3d 78, 89 (2d Cir. 2017); United States v. Coddington, 802 F. App'x 373, 373 (10th Cir. 2020), including at least one that previously did not abate restitution upon the death of a defendant, see United States v. Ajrawat, 738 F. App'x 136, 139 (4th Cir. 2018) ("[T]o the extent [a prior circuit case not abating restitution] conflicts with Nelson in this regard, it is

---

[4] In the government's brief, submitted before Reynolds's passing, the government argued that Reynolds's challenges to the forfeiture order were not properly before us in this appeal because no final order of forfeiture as to Reynolds's PixarBio shares had issued when his notice of appeal was filed.   However, this potential jurisdictional issue does not prevent us from applying the doctrine of abatement ab initio to Reynolds's convictions, which are before us, and remanding to the District Court, which has continued to exercise jurisdiction over the criminal forfeiture proceedings related to the convictions, with instructions to take the actions that follow from the vacatur of the convictions.

no longer good law.").  And we see no reason here to conclude otherwise, at least as no argument has been made to us that challenges the government's position that "the reasoning of Nelson . . . compels abating monetary penalties where a defendant dies during his direct appeal."  Brooks, 872 F.3d at 89.  However, in so holding, we do not take any position on whether the different considerations that might arise where forfeited property had been distributed to victims before a defendant's death would call for a different result, as no suggestion has been made here that any forfeited funds were distributed to victims before Reynolds died.

### III.

For the foregoing reasons we **dismiss** the appeal and **remand** to the District Court for it to vacate the judgment of conviction and the orders of restitution and forfeiture and for it to dismiss the superseding indictment.